UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

THE WALLA WALLA COUNTRY CLUB, a        )
Washington corporation,                )        NO.  CV-13-5101-LRS
                                       )
                                       )        ORDER RE DEFENDANT'S MOTION TO
                    Plaintiff,         )        DISMISS
                                       )
        -vs-                           )
                                       )
PACIFICORP, dba PACIFIC POWER &        )
LIGHT COMPANY, an Oregon               )
corporation,                          )
                                       )
                    Defendant.        )
                                       )

**BEFORE THE COURT** is Defendant's Motion to Dismiss For Lack of Subject Matter (ECF No. 11), filed on December 12, 2013 and noted for oral argument on March 13, 2014.  Due to court calendar conflicts, a hearing was held on June 5, 2014 in Yakima, Washington.  Matthew W. Daley, David S. Grossman, and Stanley M. Schwartz appeared on behalf of Plaintiff Walla Walla Country Club.  Troy D. Greenfield appeared on behalf of Defendant PacifiCorp, dba Pacific Power & Light Company (hereinafter "PacifiCorp").  At the close of oral argument, the court took the matter under advisement.

///

ORDER - 1

## I.    INTRODUCTION

Defendant PacifiCorp moves to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), arguing that the dispute in this case must be resolved by the Washington Utilities and Transportation Commission (hereinafter "WUTC").  Defendant argues the WUTC has exclusive jurisdiction to determine whether the cost quoted by PacifiCorp, for removal of utility facilities supplying power to Plaintiff Walla Walla Country Club (hereinafter "Country Club") exceeds what is permitted by PacifiCorp's tariff.  Defendant maintains the Country Club's complaints fall within the exclusive jurisdiction of the WUTC; therefore, state and federal courts lack subject matter jurisdiction.  PacifiCorp moves for an order dismissing this action for lack of subject matter jurisdiction under Fed.R.Civ.P. Rule 12(b)(1).

In the alternative, PacifiCorp argues the court should dismiss and refer the action to the WUTC under the doctrine of primary jurisdiction. PacifiCorp asserts that the dispute is within the WUTC's area of special expertise, authority, and pervasive regulation. Additionally, PacifiCorp notes the instant issues are before the WUTC at this time and a judicial decision risks conflicting with the WUTC's determination.

## II.   BACKGROUND

In October 2012, the Country Club asked PacifiCorp to disconnect the County Club's facilities from PacifiCorp's electrical grid,so that the Country Club could transfer its utility service to Columbia Rural Electric Association, Inc. (hereinafter "CREA"), one of Pacific Power's

competitors.[1]  PacifiCorp informed the Country Club that its tariff, which has been approved by the WUTC, requires the Country Club to pay the cost to remove certain utility equipment that PacifiCorp had installed specifically to provide service to the Country Club.

The PacifiCorp's Rule 6, General Rules and Regulations (hereinafter "tariff"), Section I provides, in pertinent part:

> I. **PERMANENT DISCONNECTION AND REMOVAL OF COMPANY FACILITIES:**
>
> When Customer requests Permanent Disconnection of Company's facilities, Customer shall pay to Company the actual cost for removal less salvage of those facilities that need to be removed for safety or operational reasons . . .
> . . .
> Company shall provide an estimate of such charges to Customer prior to removal of facilities. The Customer shall pay the amount estimated prior to disconnection and removal of facilities. The facilities shall be removed at a date and time convenient to both the Customer and the Company. No later than 60 days after removal, Company shall determine the actual cost for removal less salvage, and adjust the estimated bill to that amount . . .

ECF No. 13, Exh. A.

Schedule 300 of PacifiCorp's tariff also provides that the rate charged for removal of facilities for "nonresidential service removals" is the "actual cost less salvage." *Id*.

In July 2012, PacifiCorp verbally gave the Country Club an initial estimate of the cost to remove a portion of the PacifiCorp facilities required for disconnection. ECF No. 14 at ¶ 4. PacifiCorp's removal quotes last for ninety days. *Id*. Once the parties agree,

---

[1]CREA is not regulated by the WUTC.

PacifiCorp and the customer execute a contract for the removal. *Id*.  Upon receiving the estimate, the Country Club elected against discontinuing any portion of services with PacifiCorp. *Id*. at ¶ 5.  No removal contract was signed. CREA again pursued the Country Club's business and offered to pay the cost of facilities removal. *Id*.  In October 2012, after the initial estimate had expired and the Country Club had some further discussions with CREA, the Country Club notified PacifiCorp that it intended to permanently discontinue its service[2] with PacifiCorp and move all of its business to CREA. *Id*. at ¶ 5.

In response to this information, PacifiCorp began to update the initial estimate provided in July, to include removal of all facilities, which, by way of example, would include among other things, digging up the golf course fairways, greens and parking lot.  The estimated removal costs ended up being significantly higher than originally estimated. On December 28, 2012, after PacifiCorp informed the Country Club of the total estimated cost of removal, the Country Club filed an informal complaint with the WUTC.  The Country Club contended that removal of the conduit was unnecessary and could damage its property. *Id*.

On January 11, 2013, PacifiCorp submitted a request for a general rate revision to the WUTC. This filing included potential revisions to Rule 6 and Schedule 300, which address removal of facilities when a customer requests permanent disconnection. ECF No. 13 at ¶ 3. On January

---

[2]PacifiCorp had provided service to the Country Club for the past 90 years.

ORDER - 4

15, 2013, CREA intervened to challenge PacifiCorp's potential changes to the tariff. Id. The WUTC found that "while CREA does not have a direct and substantial interest in charges to PSE's [sic] customers, the Commission has a strong interest in seeing that the record is fully developed . . . " and thus allowed CREA to intervene. Id.; Exh. B. CREA proposed a number of additional changes to the portion of the tariff pertaining to facilities removal, likely in anticipation of other PacifiCorp customers desiring disconnection or transfer of existing services to another provider.

On January 25, 2013, PacifiCorp informed the Country Club and the WUTC that the cost to remove the facilities would be $104,176.[3] Id. at ¶ 8. The WUTC closed the informal complaint as "Company Upheld with Arrangements." Id. PacifiCorp indicated that it would transfer services after the Country Club had paid a disconnection fee of approximately $100,000. The Country Club refused to pay the demanded disconnection fee for the removal or to otherwise purchase the facilities. The Country Club did not file a formal complaint with the WUTC or seek further assistance from the agency. PacifiCorp has refused to disconnect the Country Club from the electrical grid.

On July 11, 2013, PacifiCorp elected to withdraw the portion of its proposed tariff revision pertaining to Rule 6 and Schedule 300, so it

---

[3]The $104,176.00 figure included two components: (i) $66,718 for the removal of two separate runs of conduit, along with the attendant electrical vaults; and (ii) $37,458 for the removal of wires, transformers and metering equipment. See Complaint, ECF. No. 1, ¶3.14.

could "gather additional data and analysis regarding the actual costs" of removal services.  ECF No. 13 at ¶ 4; Exh. C.  CREA objected to this withdrawal, arguing that the WUTC should consider CREA's objections to the portion of the proposed tariff revision addressing the cost of facilities removal, despite PacifiCorp's withdrawal of its proposed changes.  *Id*.  The WUTC granted PacifiCorp's motion to withdraw its proposed tariff revisions and dismissed CREA as a party.  *Id*.  The WUTC did, however, "require [PacifiCorp] to initiate another proceeding within the next four months in which the Commission can carefully review PacifiCorp's costs, terms, and conditions of service and the Company's administration of Schedule 300 and Rule 6."  *Id*.

On August 6, 2013, the Country Club initiated this action in Walla Walla Superior Court (i) to require PacifiCorp to disconnect its service under a breach of contract (Tariff Containing Rate Schedules and General Rules); and (ii) to recover damages for the consequential losses that the County Club suffered as a result of PacifiCorp's refusal to disconnect its service.  On September 6, 2013, PacifiCorp removed this case to federal court based on diversity.  ECF No. 1.

**III. DISCUSSION**

**A. 12(b)(1) Standard**

Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 118 S. Ct. 1003 (1998). Subject matter jurisdiction is mandatory and unwaivable. It must be established before a plaintiff's

claims can be considered on the merits. *Wilbur v. Locke*, 423 F.3d 1101, 1105 (9th Cir. 2005). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235 (2006).

**B.  WUTC - Exclusive Jurisdiction**

PacifiCorp argues that the Country Club's complaint-whether a fee charged by a public service company exceeds the tariff rate or is unreasonable--falls squarely within the exclusive jurisdiction of the WUTC. Therefore, state and federal courts lack subject matter jurisdiction. PacifiCorp further argues that RCW 80.04.220-.240 applies in this case, not RCW 80.04.440 as the Country Club asserts.

The Country Club disagrees urging that RCW 80.04.440 specifically affords a private right of action, in court, to recover damages caused by a public utility's violation of duty. That statute states that "[a]n action to recover for such loss, damage or injury may be brought in any court of competent jurisdiction by any person or corporation." The Country Club's predominant complaint is that it allegedly can not obtain its requested relief before the WUTC because the WUTC is not authorized to resolve the damage claims. By inference however, the only "damages" alleged or discussed at oral argument (loss of electrical rate cost savings while awaiting an adjudication by WUTC and/or facility restoration/equipment removal expense) would appear to fall within the agency's authority.

ORDER - 7

The Country Club insists this case is a straight-forward breach of contract case, and contends that the only issue is whether some safety or operational reasons require PacifiCorp to remove the facilities.

The court is not convinced that this is a simple breach of contract claim. The Country Club, in its original state court complaint, alleges that this dispute is over the charge to disconnect facilities needed to switch its electrical utility provider. The Country Club complains that the charge for more than $100,000 to remove the required facilities is what this dispute is all about. The complaint alleges, "PacifiCorp breached its contractual obligations, under the Rules, by refusing to disconnect the Club's property from PacifiCorp's facilities unless and until the Club paid to remove or purchased the conduit and vaults." ECF No. 1 at ¶4.5. The complaint also alleges that PacifiCorp's charges for facilities removal are excessive or not allowed by the tariff. *Id*. at ¶ 3.19. The complaint alleges PacifiCorp breached its contractual obligations under the tariff. Id. at ¶ 4.6.

In reality, the Country Club is complaining that PacifiCorp is charging an excessive or exorbitant amount ($104,176) for such disconnection services, which is impeding their ability to switch utility companies because they refuse to pay this excessive amount. It appears that the RCW 80.04.220 is the statute on point for this complaint, which reads:

> **80.04.220. Reparations**
>
> When complaint has been made to the commission concerning the reasonableness of any rate, toll,

ORDER - 8

> rental or charge for any service performed by any public service company, and the same has been investigated by the commission, and the commission has determined that the public service company has charged an excessive or exorbitant amount for such service, and the commission has determined that any party complainant is entitled to an award of damages, the commission shall order that the public service company pay to the complainant the excess amount found to have been charged, whether such excess amount was charged and collected before or after the filing of said complaint, with interest from the date of the collection of said excess amount.

RCW 80.04.220

This judicial officer concludes that in light of the foregoing language, the Country Club's complaint is covered by RCW 80.04.220, which provides a process for a formal complaint concerning the reasonableness of *any* charge for *any* service performed. Further, once a complaint is made to the commission that PacifiCorp has overcharged for a service, i.e., disconnection of facilities, RCW 80.04.230 provides for a refund for said overcharges when warranted following an investigation and decision. This statute reads:

**80.04.230. Overcharges--Refund**

> When complaint has been made to the commission that any public service company has charged an amount for any service rendered in excess of the lawful rate in force at the time such charge was made, and the same has been investigated and the commission has determined that the overcharge allegation is true, the commission may order that the public service company pay to the complainant the amount of the overcharge so found, whether such overcharge was made before or after the filing of said complaint, with interest from the date of collection of such overcharge.

RCW 80.04.230

ORDER - 9

The County Club concedes that Rule 6 is the specific tariff provision that applies in this.  The parties do not dispute that Rule 6 would guide the commission in determining if the public service company has charged in excess of the lawful amount.  Finally, if an overcharge is determined and the public service company fails to repay such overcharge ordered by WUTC, RCW 80.04.240 creates a new right or independent cause of action to collect and claim by plenary action in a tribunal of competent jurisdiction.  This statute provides:

**80.04.240. Action in court on reparations and overcharges**

If the public service company does not comply with the order of the commission for the payment of the overcharge within the time limited in such order, suit may be instituted in any superior court where service may be had upon the said company to recover the amount of the overcharge with interest. It shall be the duty of the commission to certify its record in the case, including all exhibits, to the court. Such record shall be filed with the clerk of said court within thirty days after such suit shall have been started and said suit shall be heard on the evidence and exhibits introduced before the commission and certified to by it. If the complainant shall prevail in such action, the superior court shall enter judgment for the amount of the overcharge with interest and shall allow complainant a reasonable attorney's fee, and the cost of preparing and certifying said record for the benefit of and to be paid to the commission by complainant, and deposited by the commission in the public service revolving fund, said sums to be fixed and collected as a part of the costs of the suit. If the order of the commission shall be found to be contrary to law or erroneous by reason of the rejection of testimony properly offered, the court shall remand the cause to the commission with instructions to receive the testimony so proffered and rejected and enter a new order based upon the evidence theretofore taken and such as it is directed to receive. The court may in its discretion

remand any cause which is reversed by it to the commission for further action. Appeals to the supreme court shall lie as in other civil cases. All complaints concerning overcharges resulting from collecting unreasonable rates and charges or from collecting amounts in excess of lawful rates shall be filed with the commission within six months in cases involving the collection of unreasonable rates and two years in cases involving the collection of more than lawful rates from the time the cause of action accrues, and the suit to recover the overcharge shall be filed in the superior court within one year from the date of the order of the commission.

The procedure provided in this section is exclusive, and neither the supreme court nor any superior court shall have jurisdiction save in the manner hereinbefore provided.

RCW 80.04.240

This court concludes that although the Country Club's argument is couched in terms of a "straight-forward" breach of an "individual" contract claim with compensable damages, the Country Club's claim is really one for overcharges, for which they have not sought to file a formal complaint pursuant to the statutes in place for doing so.[4] Considering the actions of CREA in front of the WUTC, i.e., intervening to challenge PacifiCorp's potential changes to the tariff at issue here, the Country Club appears to be seeking a ruling that would be common to all PacifiCorp customers who wish to disconnect and switch service to CREA. The court further concludes that the commission appears to have ample statutory authority to afford meaningful relief as described in the statutes recited above.

---

[4]See *D.J. Hopkins, Inc. v. GTE Northwest, Inc.*, 89 Wash.App. 1 ((1997).

ORDER - 11

### C.  Doctrine of Primary Jurisdiction - Referral to WUTC

As an alternative, PacifiCorp argues that the court should exercise its discretion and apply the doctrine of primary jurisdiction so as to refer the Country Club's claims to WUTC for breach of contract and damages due to excessive charges to disconnect.

PacifiCorp represents that the very same issues before this court currently stand as an administrative proceeding in front of the WUTC. The doctrine of primary jurisdiction "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *Barahona v. T-Mobile US, Inc.,* 628 F.Supp.2d 1268, 1270 (W.D.Wash.,2009) *citing Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 303, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976). The doctrine is properly invoked when enforcement of a claim in court would require resolution of issues that have already been placed within the special competence of an administrative body. The *T-Mobile US* court quoted a passage wherein Justice Frankfurter described the following circumstances the doctrine should be applied to:

> [I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over.... Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

*T-Mobile US, Inc.*, 628 F.Supp.2d at 1270 (citation omitted).

The doctrine is applied on a case-by-case basis, considering several factors. First, the court should examine "whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Id.* At 1270-71 (citation omitted). Second, the court must determine if uniformity is desirable and could be obtained through administrative, rather than judicial, review. *Id.* (citation omitted). Finally, the court considers the "expert and specialized knowledge of the agencies involved...." *Id.* (citation omitted).

The Court finds, in applying these factors, that the doctrine of primary jurisdiction is applicable in this case as another ground to refer this matter to WUTC. As the court has concluded above, the dispute is within the WUTC's area of special expertise, authority, and pervasive regulation. For example, determining under the tariff those facilities that need to be removed for safety or operational reasons and whether certain facilities were necessary to provide service to a customer would appear to be squarely within the expertise of the WUTC. Indeed, removal of facilities when a customer requests permanent disconnection, particularly the amounts charged, has been placed within the special competence of the WUTC by RCW 80.04.220-.240.

In view of the disparity between the cases cited by the parties, the Court finds that the interest of uniformity weighs heavily in favor of deferring to the expertise of the WUTC under the primary jurisdiction

doctrine. The WUTC's determination as to whether PacifiCorp's disconnection charge is a "charge" and if it is, whether the charge is reasonable, will necessarily guide similar complaints or suits against PacifiCorp when its customers seek to disconnect and establish service with a public service competitor albeit one that is not regulated by WUTC. Uniformity is very much at issue here, as the parties have pointed out that other customers may be following suit and this issue is before the WUTC currently. Thus, use of the primary jurisdiction doctrine and referral to the WUTC will avoid disparate or conflicting outcomes for customers and utility providers, and promote uniformity and consistency in WUTC's regulation of the utility industry as the competition unfolds. Accordingly, it is hereby **ORDERED** that Defendant's Motion to Dismiss, **ECF No. 11,** is **GRANTED.** This case is dismissed for lack of subject matter jurisdiction.

The District Court Executive is directed to enter this Order and **CLOSE THE FILE.**

**DATED** this 24th day of June, 2014.

*s/Lonny R. Suko*

_____
LONNY R. SUKO
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 14